UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GINO GENTILE,<br>    *Petitioner*,<br>     *v.*<br>MICHELLE R. RICCI, *et al.*,<br>    *Respondents*. | Civil No. 3:11cv138 (JBA)<br><br>March 24, 2014 |

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Gino Gentile, an inmate currently confined at the New Jersey State Prison in Trenton, New Jersey and serving a sentence imposed by the State of New Jersey, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2001 Connecticut conviction on one count of felony murder, one count of robbery in the first degree and one count of conspiracy to commit robbery in the first degree.  For the reasons that follow, the petition will be denied.

### I.  Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted).   A federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision.  *See Carey v. Musladin*, 549 U.S. 70, 74 (2006).  The law may be a generalized standard or a bright-line rule intended to apply the standard in a particular context.  *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle.  *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008), *cert. denied*, 555 U.S. 1176 (2009).  The state court decision must be more than incorrect; it also must be objectively unreasonable, which is a substantially more stringent standard.  *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits, affords state-court rulings the benefit

of the doubt and is highly deferential and difficult for petitioner to meet).  In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  *See id.*

## II.   Procedural History

On December 7, 1998, New Britain police officers arrested the petitioner on charges of Felony Murder in violation of Connecticut General Statutes § 53a-54c, Robbery in the First Degree in violation of Connecticut General Statutes § 53a-134(a)(4), and Conspiracy to Commit Robbery in the First Degree in violation of Connecticut General Statutes §§ 53a-134(a)(4) and 53a-48(a) in connection with the March 17, 1997 robbery of the Fortune Chinese Restaurant in New Britain.  (*See* Resp'ts' Mem., App. B at 3-7.)  On February 15, 2001, in the Connecticut Superior Court for the Judicial District of New Britain, a jury convicted the petitioner of all three counts.  (*See id.* at 4-5.)  On May 10, 2001, a judge sentenced the petitioner to a total term of imprisonment of 100 years.  (*See id.* at 9.)

The petitioner appealed his conviction on five grounds.  *See State v. Gentile*, 75 Conn. App. 839, 841-43, 818 A.2d 88, 93-95 (2003).   On April 1, 2003, the Connecticut Appellate Court affirmed the judgment of conviction.  *See id.* at 864, 818 A.2d at 106.   On May 15, 2003, the Connecticut Supreme Court denied the petition for certification to appeal the decision of the Connecticut Appellate Court.  *See State v. Gentile*, 263 Conn. 926, 823 A.2d 1218 (2003).

In February 2004, the petitioner filed a petition for writ of habeas corpus in state court seeking to restore his right to obtain sentence review.  (*See* Resp'ts' Mem., App. I, Docket of *Gentile v. Warden, State Prison*, Case No. TSR-CV04-0004498-S.)  On April 9, 2008, a state court judge entered a judgment pursuant to a stipulation of the parties agreeing to the restoration of the petitioner's right to seek review of his sentence by the Sentence Review Division in Connecticut Superior Court.  (*See id.*)  On November 20, 2012, the Sentence Review Division

affirmed the sentence imposed on the petitioner by the trial court.  *See State v. Gentile*, No. HHBCR98179756, 2012 WL 6582619 (Conn. Super. Ct. Nov. 20, 2012).

On October 14, 2008, Mr. Gentile filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of New Jersey challenging his 2001 Connecticut conviction.  On November 20, 2008, United States District Judge Jose L. Linares issued an order transferring the petition to this Court.  The Clerk in the United States District Court for the District of New Jersey, however, neglected to transfer the petition to this Court until January 26, 2011. The petitioner filed an Amended Petition for Writ of Habeas Corpus on February 28, 2011 naming the Warden of the New Jersey State Prison and the State of Connecticut as respondents.  Counsel for the State of Connecticut has filed a memorandum in opposition to the Amended Petition.

III.   **Factual Background**

The Connecticut Appellate Court determined that the jury reasonably could have found

the following facts relating to the robbery at the Fortune Chinese Restaurant:

> On the evening of March 17, 1997, the [petitioner], along with Jorge Concepcion, Edgar DeJesus and several other individuals, congregated in a parking lot at a housing project on Corbin Street in New Britain. Members of the group were talking and smoking marijuana. During the conversation, an individual identified as "Anthony" said that he had earlier robbed the Fortune Chinese Restaurant with a BB gun.   After several hours, the group dispersed, with the [petitioner], Concepcion and DeJesus leaving together.   As the [petitioner], Concepcion and DeJesus walked toward a car, they joked about robbing the Fortune Chinese Restaurant. The [petitioner] then removed a .380 caliber semiautomatic gun from his waistband, and the defendant, Concepcion and DeJesus decided to rob the restaurant.   To conceal his identity, Concepcion went to a garbage dumpster to find something to cover his face.   The [petitioner] pulled out a ski mask that he already had in his possession.   The [petitioner], Concepcion and DeJesus then drove to a parking lot in the vicinity of the Fortune Chinese Restaurant.

> Upon arriving at the parking lot, DeJesus remained in the vehicle, and the [petitioner] and Concepcion walked toward the restaurant. After ensuring that there were no customers in the restaurant or police in the area, the [petitioner] and Concepcion put on their masks, the [petitioner] took out his gun and chambered a round, and they ran into the restaurant.   The [petitioner] told everyone to "hit the floor," and he jumped over the counter to get to the cash register.   Once over the counter, the [petitioner] demanded that the individual who was near the register open it and give him its contents.   In the meantime, Concepcion entered the kitchen area, where there were two individuals.   The [petitioner] then went into the kitchen area with Concepcion.   Concepcion demanded that one of the two, Ming Zhang, give him her purse, which she did. He then turned to leave the restaurant.   The victim, San Chiu Wong, who also was in the kitchen area, lifted his head and the [petitioner] fired a single round from his .380 caliber gun, striking the victim in the back of the head. The [petitioner] then took the victim's wallet.

> The [petitioner] and Concepcion fled the restaurant and ran to the waiting vehicle. The [petitioner] got behind the wheel and drove toward an arcade in Southington.   During the drive, the [petitioner] and Concepcion threw their masks and the wallets that they took from the victim and Zhang out the window.

Upon arriving at the arcade, the [petitioner] divided the money that was taken from the restaurant, and gave Concepcion and DeJesus a share.

On March 18, 1997, the victim died from the injuries he sustained from the gunshot wound the previous day.

*Gentile,* 75 Conn. App. at 841-42, 818 A.2d at 94.

## III.   Discussion

The petitioner asserts the same five grounds that he raised on direct appeal of his conviction.  He argues that: (1) the trial judge erred in permitting the State to introduce into evidence a cooperation agreement that the State had entered into with Jorge Concepcion, an accomplice in the robbery of the Chinese restaurant; (2) questions posed to Jorge Concepcion on direct examination and comments during closing argument by Assistant State's Attorney Brian Prelski regarding the cooperation agreement constituted prosecutorial misconduct;[1] (3) the trial judge refused to charge the jury with his requested instruction regarding credibility of accomplice testimony; (4) the trial judge improperly declined to inquire into his complaints about his attorney; and (5) there was insufficient evidence for the jury to conclude, beyond a reasonable doubt, that he conspired to commit robbery in the first degree.

Grounds one and two relate to the trial court's admission of the cooperation agreement and the prosecutor's questions and comments relating to the cooperation agreement between the State of Connecticut and Jose Concepcion.  The Connecticut Appellate Court concluded that the following additional facts were relevant to its consideration of both grounds for relief:

Following Concepcion's arrest, he entered into a cooperation agreement with the state.  According to the terms of agreement, in return for Concepcion's full cooperation in the

---

[1] The second ground is included in an attachment to the Amended Habeas Petition.  *See* Am. Pet. Writ Habeas Corpus at 22.

prosecution of any individual arrested in connection with the homicide and robbery that occurred at the Fortune Chinese Restaurant, the state agreed to permit Concepcion to enter a plea of guilty to robbery in the first degree for his involvement and to receive a sentence of no more than twenty years imprisonment.

> At the [petitioner]'s trial, the state called Concepcion as a witness. After the state laid a foundation for the admission of the cooperation agreement, the court admitted the agreement into evidence as a full exhibit after the [petitioner] stated that he did not object. The state then read the document to the jury and proceeded to question Concepcion about the events that transpired on March 17, 1997. On cross-examination, the [petitioner] also questioned Concepcion regarding the events of March 17, 1997, and as to his motivation for entering into the cooperation agreement. On re-direct examination, the state asked Concepcion about the consequences that he faced if he did not abide by the terms of the cooperation agreement. Additionally, during closing argument, both the state and the [petitioner] commented on the cooperation agreement that the state had entered into with Concepcion.

*Id.* at 843-44, 818 A.2d at 95-96.

### A.     Trial Court's Improper Admission of the Cooperation Agreement

The petitioner contends that the trial court erred in admitting the cooperation agreement between the State of Connecticut and Jose Concepcion. The respondent argues that ground one should be dismissed as having been procedurally defaulted because the Connecticut Appellate Court declined to review the merits of the claim based on an adequate and independent state procedural rule.

Under the procedural default doctrine, a federal court will not review the merits of claim raised in a habeas petition, including a constitutional claim, if the state court declined to address the claim because the prisoner failed to meet a state procedural requirement and the state court decision is based on independent and adequate procedural grounds. *See Walker v. Martin*, ___ U.S. ___, 131 S. Ct. 1120, 1127-28 (2011) (citations omitted). A state rule or requirement must

7

be firmly established and regularly followed by the state in question to qualify as an adequate procedural ground.  *See Beard v. Kindler*, 558 U.S. 53, 130 S. Ct. 612, 618 (2009) (internal quotation marks and citation omitted).  A state court decision will be "independent" when it "fairly appears" to rest primarily on state law.  *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citation omitted).

A state prisoner can obtain federal habeas review despite having defaulted on his federal claim in state court, if he can demonstrate cause for the default and actual prejudice resulting or he can show that failure to consider the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

On direct appeal, the petitioner conceded that he had not objected to the admission of the cooperation agreement.  (*See* Resp'ts' Mem., App. C.)  Thus, he acknowledged that the claim was unpreserved, but sought review under the Connecticut Supreme Court's decision in *State v. Golding*, 213 Conn. 233, 567 A.2d 823 (1989), under which a defendant may raise an unpreserved claim on appeal if four conditions are met:  (1) the record of the trial court is sufficient to review the claimed error; (2) the claim asserts a violation of a fundamental right and is of constitutional magnitude; (3) it is clear that a violation of the constitution exists and the violation resulted in a deprivation of the defendant's right to a fair trial; and (4) if the claim is subject to a harmless error review, the state neglected to show harmlessness of the alleged violation of the defendant's constitutional rights beyond a reasonable doubt.  *See id.* at 239-40, 567 A.2d at 827.

The Connecticut Appellate Court concluded that the petitioner had failed to satisfy the second prong of *Golding* because his claim involving the admissibility of the cooperation agreement was merely evidentiary in nature and did not implicate a constitutional right or result

in a fundamentally unfair trial.  Thus, the Appellate Court declined to review the claim under *Golding*.  *See Gentile,* 75 Conn. App. at 846-47, 818 A.2d at 97.

The Connecticut Appellate Court also considered whether the petitioner's claim warranted review under the plain error doctrine.  Because the petitioner had been asked by the state whether he objected to the introduction of the cooperation agreement, and stated that he did not, and because the petitioner used the agreement in his own cross examination of Concepcion, the Appellate Court held that the petitioner had waived any objection he might have had and plain error review was not appropriate.  *See id.* at 847-48, 818 A.2d at 97.  For the same reasons, the Connecticut Appellate Court declined to exercise its supervisory power to review the claim despite the petitioner's waiver.  *See id.* at 848, 818 A.2d at 97-98.

It is evident that the Connecticut Appellate Court expressly relied on a state procedural rule to decline to review the petitioner's claim.  Furthermore, the procedural rule was definite, well-established and regularly applied at the time of the Connecticut Appellate Court's decision on the petitioner's unpreserved claim.  *See e.g.,* Connecticut Practice Book § 60-5 ("[T]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial.  The court may in the interests of justice notice plain error not brought to the attention of the trial court")*; State v. Toccaline*, 258 Conn. 542, 550-51, 783 A.2d 450, 454 (2001) (declining to review unpreserved admissibility of evidence claim under *Golding* because it was not constitutional in nature); *State v. Spyke,* 68 Conn. App. 97, 118, 792 A.2d 93, 109 ("We decline to review this claim because it is "evidentiary and not of constitutional magnitude, and thus fails *Golding's* second prong."), *cert. denied*, 261 Conn. 909, 804 A.2d 214 (2002); *State v. Dixon*, 62 Conn. App. 643, 649-50, 772 A.2d 166, 170-71 (2001) (defendant's "attempt[] to place constitutional tag on . . . evidentiary ruling" did not transform claim into one "of constitutional

9

magnitude as required [for review] under second prong of *Golding*"); *State v. Brown*, 73 Conn. App. 751, 755-57, 809 A.2d 546, 549-50 (2002) (declining to review defendant's unpreserved claim because it did not meet constitutional magnitude prong of *Golding* and was neither unfair to parties nor undermined the public's confidence in the legal system as required under the plain error doctrine); *State v. Owens*, 63 Conn. App. 245, 258-59, 775 A.2d 325, 335 (declining to review under *Golding* because no constitutional right had been violated and concluding case not appropriate for plain error review or the invocation of court's supervisory powers), *cert. denied,* 256 Conn. 933, 776 A.2d 1151 (2001).

Because the Connecticut Appellate Court made an adequate and independent finding that the petitioner had procedurally defaulted on his claim and appellate review was not appropriate because the claim did not implicate a constitutional right or result in a fundamentally unfair trial under the second prong of *Golding*, this Court cannot review the claim unless the petitioner can show "cause and prejudice" or "a fundamental miscarriage of justice." *Id.* at 854 (internal citations omitted).

To establish cause to excuse procedural default, the petitioner must identify "some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986).  Such factors include interference by state officials impeding compliance with state rules or a showing that the factual or legal basis for a claim was not reasonably available to defense counsel.  *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).  The petitioner has failed to allege any external cause to excuse the procedural default by his attorney.

Although ineffective assistance of counsel can constitute cause for failing to comply with a State's procedural rule, "[a]ttorney error short of ineffective assistance of counsel, [however], does not constitute cause for a procedural default even when that default occurs on appeal rather

than at trial." *Murray*, 477 U.S. at 488, 492.  A claim of ineffective assistance must be raised in a state court proceeding as an independent claim before a petitioner may attempt to use it to establish cause for a procedural default." *See id.* at 489.   Thus, a petitioner must have properly presented and exhausted the ineffective assistance of counsel claim in state court before it will be considered as cause to excuse procedural default.  *See Edwards*, 529 U.S. at 453.  The petitioner did not raise a claim of ineffective assistance of trial counsel in state court.

Thus, the petitioner has not shown cause to excuse his procedural default of the claim that the trial court erred in admitting the cooperation agreement into evidence.   Where a petitioner has not shown cause, the court need not address the prejudice prong of the procedural default standard.  *See McCleskey*, 499 U.S. at 501.

Nor has the petitioner shown that failure to consider this claim would result in a fundamental miscarriage of justice, that is, "the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.   To meet this exception, the petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

A petitioner must support a claim of actual innocence "with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.   Actual innocence requires a showing of factual innocence, not "legal innocence."  *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). The petitioner has not alleged that he is actually innocent nor submitted any evidence to support such a claim.   Accordingly, ground one of the amended petition is denied due to procedural default.

B.      **Prosecutorial Misconduct**

Next, the petitioner argues that the prosecutor engaged in misconduct when he questioned witness Concepcion about the cooperation agreement on direct and re-direct examination and when he referred to the cooperation agreement during his closing argument. Although, the petitioner did not object at trial to the actions of the prosecutor, the Connecticut Appellate Court reviewed this unpreserved claim.  *See Gentile*, 75 Conn. App. At 849, 818 A.2d at 98 ("We will review the claim under *Golding* because the record is adequate for review and because an allegation of prosecutorial misconduct in violation of a fundamental right is of constitutional magnitude.")

The Supreme Court has held that prosecutorial misconduct does not give rise to a constitutional violation unless the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Generally, a prosecutor's remarks that might have been undesirable or even universally condemned do not constitute prejudice amounting to a denial of a defendant's constitutional right to due process.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  The petitioner is required to identify specific instances of "egregious misconduct," *Donnelly*, 416 U.S. at 647-48, that show he was "substantially prejudice[d]."  *United States v. Thomas*, 377 F.3d 232, 244 (2d Cir. 2004) (citations omitted).  In evaluating a claim of prosecutorial misconduct, the court considers the prosecutor's remarks in the context of the entire trial "to determine whether the prosecutor's behavior amounted to prejudicial error."  *United States v. Young*, 470 U.S. 1, 12 (1985).  The Court must consider how much of the perceived misconduct was invited by the defense, whether the trial court gave any curative jury instructions and the strength of the State's case against the defendant.  *See Darden,* 477 U.S. at 181-82.

Although the Connecticut Appellate Court did not cite Supreme Court precedent, it properly applied the general standard set forth in *Darden* and *Donnelly*.  Accordingly, the Connecticut Appellate Court applied the correct legal principles, the decision is not contrary to federal law.  *See Early v.* Packer, 537 U.S. 3, 8 (2002) (holding that state court need not be aware of nor cite relevant Supreme Court cases, as long as the reasoning and decision do not contradict the applicable law).  Thus, the Court considers whether the analysis of the Connecticut Appellate Court was an unreasonable application of Supreme Court law.

On appeal, the petitioner argued that the prosecutor had engaged in misconduct when he impermissibly bolstered the credibility of witness Concepcion during direct and re-direct examination by offering the cooperation agreement into evidence and posing questions to Concepcion regarding the agreement.  In support of this argument, the petitioner relied on case law from the Second Circuit Court of Appeals that addressed the use of a cooperation agreement on direct examination of a witness to the agreement.  *See Gentile*, 75 Conn. App. At 850-51, 818 A.2d at 98-99.

In considering the petitioner's argument, the Appellate Court reviewed decisions of all the federal Circuit Courts of Appeal and determined that there was a split among the Circuits. The Appellate Court noted that a minority of three Circuit Courts, including the Second Circuit, had held that a prosecutor was precluded by Federal Rule of Evidence 608(a)(2) from introducing a cooperation agreement involving a trial witness into evidence until after the credibility of that witness had been attacked.  *See id.* (citing cases from all twelve Circuit Courts of Appeal, including the D.C. Circuit).  A majority of nine Circuit Courts had held, however, that the prosecution's introduction of a cooperation agreement into evidence on direct examination of the witness and questioning of the witness as to his or her obligation to testify truthfully to

13

receive the benefits of the agreement did not constitute improper bolstering of the witness, because cooperation agreements may both impeach and bolster a witness' credibility.  *See id.* (citing cases).

The Appellate Court was persuaded by the view of the majority of the federal courts holding that it was permissible on direct examination, to introduce a cooperation agreement and question a witness regarding the terms of the agreement.   Accordingly, it determined that the introduction of the cooperation agreement and questioning of Concepcion as to the terms of the agreement on direct and re-direct examination did not constitute improper bolstering.  *See id.* at 852, 818 A.2d at 99.   Thus, the prosecutor had not engaged in misconduct during his direct or re-direct examination of Concepcion at trial.   As there was no "clearly established law, as determined by the Supreme Court," precluding the introduction of or questioning about cooperation agreements on direct examination of a witness, the Court cannot conclude that the Connecticut Appellate Court's decision that conduct of the prosecutor was neither improper nor prejudicial was an unreasonable application of Supreme Court law to the facts of the case. *Williams*, 529 U.S. at 412.

The Connecticut Appellate Court next considered the petitioner's claim that the prosecutor improperly vouched for the credibility of Concepcion by making comments regarding the cooperation agreement during his closing argument.  The court noted that it was the petitioner's burden to demonstrate that the prosecutor's comments were so egregious and prejudicial that they deprived him of a fair trial.  *See id.* at 852-53, 818 A.2d at 100.

After reviewing the entire record of the trial, including the prosecutor's closing argument, the Appellate Court concluded that the prosecutor had not vouched for Concepcion's credibility during the closing argument, but, rather, commented on the terms in the admitted cooperation

agreement that Concepcion had signed, including an obligation by Concepcion to tell the truth at trial and a consequence for failure to tell the truth.  In addition, during his closing argument, the prosecutor pointed out that the jury could consider the fact that Concepcion was a convicted felon, was in jail in connection with the robbery and murder that had occurred at the Chinese restaurant and had entered into a cooperation agreement with the State of Connecticut.  (*See* Resp'ts' Mem., App. J., Feb. 13, 2001 Trial Tr. at 327.)  All of these comments had been elicited during direct and cross-examination of Concepcion.  Furthermore, the prosecutor made it clear to the jurors that it was their job to evaluate the credibility of witnesses, including Concepcion. (*See id.*)  Thus, the Appellate Court determined that the prosecutor's comments were not improper and had not substantially prejudiced the petitioner or deprived him of a fair trial.  This determination was a reasonable application of Supreme Court law, and accordingly , the petition is denied on this ground.

C.    **Jury Instructions**

The third ground for relief concerns the trial judge's instructions to the jury on the credibility of witnesses.   The petitioner contends that despite Concepcion's admission that he had participated in the robbery of the Chinese restaurant, the trial judge refused to give a specific instruction as to Concepcion's credibility as an accomplice as required by Connecticut law.

The Supreme Court has held that the fact that a jury instruction may be incorrect under state law is not a basis for federal habeas relief.  *See Estelle*, 502 U.S. at 71-72.  To warrant such relief, the petitioner must establish that the instruction "by itself so infected the entire trial that the resulting conviction violates due process."  *Id.*; *see also Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed by the Fourteenth

Amendment").  When analyzing a claim of an improper jury instruction, the Court must examine the instruction in the context of the charge as a whole and the entire trial record, *see Francis v. Franklin*, 471 U.S. 307, 315 (1985), and consider "the way in which a reasonable juror could have interpreted the instruction," *Sandstrom v. Montana*, 442 U.S. 510, 514 (1979).

The Connecticut Appellate Court's statement of the law, although taken from state cases, is consistent with Supreme Court precedent.  *See Early*, 537 U.S. at 8 (holding that state court need not be aware of nor cite relevant Supreme Court cases, as long as the reasoning and decision do not contradict the applicable law).  Thus, the Court considers whether the analysis of the Connecticut Appellate Court was an unreasonable application of Supreme Court precedent.

The Appellate Court acknowledged that Connecticut law required that a trial judge caution a jury to carefully scrutinize the testimony of an accomplice witness.  *See Gentile,* 75 Conn. App. at 859, 818 A.2d at 103-04 (citing *State v. Shindell*, 195 Conn. 128, 486 A.2d 637 (1985) (articulating rule regarding instructions involving accomplice witnesses)).  Although it was apparent that the trial judge had not given the exact accomplice credibility instruction that the petitioner had requested, the Appellate Court determined that the "charge that the court gave, when read as a whole, adequately informed the jury that it was to scrutinize Concepcion's testimony because of his motive in testifying and any potential bias or prejudice that he may have toward the defendant."  *Id.* at 858, 818 A.2d at 103.  Thus, the Appellate Court determined that the trial judge's instruction substantially complied with the request of the petitioner, was not improper under Connecticut law and did not deprive the petitioner of his right to a fair adjudication of his defense.  *See id.*  This conclusion, based on thorough consideration of the jury charge given and the record as a whole was not an unreasonable application of Supreme Court law.  Accordingly, the petition is denied on the fourth ground for relief.

16

**D.**    **Inquiry Regarding Complaints About Trial Attorney**

In ground four, the petitioner argues that the judge did not adequately address the complaint that he voiced about his attorney just before the end of the State's case in chief.  The petitioner contends that this failure on the part of the trial judge deprived him of his Sixth Amendment right to counsel.

The Connecticut Appellate Court determined that the following facts were relevant to its resolution of the petitioner's claim:

> Prior to the state's calling its last witness, the [petitioner] outside of the jury's presence, asked the court if he could say something.  The court declined the request stating that if the [petitioner] wanted to talk, it had to be through his attorney.  The [petitioner] in response, stated,: "I don't feel he's representing me properly."  The court responded that it thought his attorney was doing a good job. The [petitioner] then stated that he also had made the same statement previously. The court then took a lunch recess.  When court resumed, the [petitioner] did not renew his complaint.

*Gentile,* 75 Conn. App. at 859, 818 A.2d at 103–04.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  Thus, "[t]he right to be represented by counsel is a fundamental component of our criminal justice system."  *United States v. Cronic*, 446 U.S. 648, 652 (1984).  The Supreme Court has recognized that courts provide the assistance of an attorney to criminal defendants for the purpose of ensuring that they "'receive a fair trial' and that in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'"  *Wheat v. United States*, 486 U.S. 153, 159 (1988) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984) and *Cronic*, 466 U.S. at

657, n.21).

The Sixth Amendment does not guarantee a defendant a "meaningful attorney-client relationship," complete satisfaction with counsel's performance or representation by the lawyer of his or her choice. *See Morris v. Slappy*, 461 U.S. 1, 12-15 (1983). The judge presiding over the defendant's trial need only ensure that the defendant has an effective advocate." *Wheat*, 486 U.S. at 160.

The Second Circuit has observed that after the commencement of trial, a defendant has no "unbridled right to reject assigned counsel and demand another" and courts must impose restrictions on the right to "reassignment of counsel" in order to avoid the defendant's manipulation of the right "so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981) (citations and internal quotation marks omitted). When a defendant raises "a seemingly substantial complaint about counsel, however, the court should inquire into the reasons for dissatisfaction." *Id.* at 933.

Even if a trial judge fails to engage in a formal inquiry regarding a complaint about an attorney, that omission does not constitute a violation of a defendant's Sixth Amendment rights unless the defendant can demonstrate that the lack of an inquiry caused him or her harm. *See Norde v. Keane*, 294 F.3d 401, 412 (2d Cir. 2002) ("[W]here a defendant articulates reasons for his request for new counsel, the failure of a trial judge to inquire into that request is a 'procedural irregularity' which may not itself be a basis for granting habeas relief . . . in order to succeed on this Sixth Amendment claim, the petitioner must demonstrate that he was harmed by the trial judge's failure to inquire.") (quoting *McKee*, 649 F.2d at 933).

In analyzing this claim, the Connecticut Appellate Court applied state cases that mirror applicable federal law.   Because the Connecticut Appellate Court applied the correct legal principles, the decision is not contrary to federal law.  *See Early*, 537 U.S. at 8 (2002).  In applying this analysis consistent with federal alw, the Connecticut Appellate Court first noted that the petitioner's comments regarding his dissatisfaction with counsel's representation were made well after the trial had begun and just before the testimony of the State's last witness.  *See Gentile,* 75 Conn. App. at 860, 818 A.2d at 104.  Thus, it concluded the comments were not made in a timely manner.

Furthermore, the petitioner's comment was a general complaint of dissatisfaction.   The petitioner simply stated that he felt that his attorney was not properly representing him.  Although he claimed to have raised the same complaint at a prior time, he did not articulate the basis for his dissatisfaction with counsel's representation or indicate where or when he had previously raised a complaint about counsel's performance.  *See id.* at 859-60 & n.8, 818 A.2d at 103-04 & n.8.   Nor did he assert additional complaints at any other time before the judge sentenced him pursuant to the jury's guilty verdict.   (*See* Resp'ts' Mem., App. J., Trial and Sentencing Transcripts.)

The Appellate Court noted that the trial judge was in the best position to observe the performance of counsel and credited the trial judge's opinion that at the time of the petitioner's general complaints, counsel had competently represented the petitioner in connection with the trial.  *See Gentile,* 75 Conn. App. at 860-61, 818 A.2d at 104.  After considering the unspecified nature of the complaint by the petitioner and the fact that petitioner did not elaborate on or raise another complaint regarding his dissatisfaction with his attorney's performance at any other time during the trial or at sentencing, the Appellate Court concluded that the trial judge did not err in

his determination that the petitioner's complaints were not substantial enough to warrant further inquiry.[2]  Thus, the trial judge's decision did not deprive the petitioner of his Sixth Amendment right to the effective assistance of counsel.  As the Supreme Court has held, a defendant does not have the right to be completely satisfied with counsel's performance.  *See Morris*, 461 U.S. at 12-15.

The Connecticut Appellate Court's conclusion that the trial judge's decision to forgo a more extensive inquiry into the petitioner's untimely and unspecified complaints did not cause the petitioner harm or result in a deprivation of the petitioner's right to the effective advocate at trial was not an unreasonable application of federal law.  The petition for writ of habeas corpus is denied on this ground.

### E.  Insufficient Evidence on Charge of Conspiracy to Commit Robbery

In the fifth ground for relief, the petitioner contends that the state presented insufficient evidence to enable the jury to conclude beyond a reasonable doubt that he conspired to commit

---

[2] In reply to the respondents' memorandum in opposition to the habeas petition, the petitioner, for the first time elaborates on the basis of the complaint he made at trial about his attorney.  He contends that after the testimony of Norberto Rodriguez, he was concerned with his attorney's representation because counsel had neglected to challenge, on cross-examination, certain testimony that Rodriguez had given on direct examination.  (*See* Reply Mem. Opp'n Pet. Writ Habeas Corpus, Doc No. 18.)

The record suggests, however, that after the petitioner voiced his unspecified complaint about counsel's performance to the judge, the petitioner discussed his concerns regarding Rodriguez' testimony with his attorney which led to counsel's decision to re-call Rodriguez to testify during petitioner's presentation of his case.  (*See* Resp'ts' Mem., App. J., Feb. 13, 2001 Trial Tr. at 288-89, 315-18.)  Thus, there is no evidence that counsel's alleged error in neglecting to question Rodriguez on cross-examination led to a complete breakdown in communication between the petitioner and counsel or an irreconcilable conflict necessitating the appointment of a new attorney to represent petitioner.  The petitioner did not raise additional complaints about counsel's representation during or after the presentation of his case to the jury or raise a claim of ineffective assistance of counsel in a state habeas petition.

the robbery at the Chinese restaurant.  Specifically, there was no evidence that he agreed with anyone to cause serious physical injury to a non-participant in the robbery, as required to find him guilty of conspiracy to commit robbery in the first degree.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  Federal courts, however, do not relitigate state trials and make independent determinations of guilt or innocence. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  When a petitioner challenges the sufficiency of the evidence used to convict him, the Court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In discussing this standard, the Supreme Court emphasized "the deference owed the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency [of the evidence] review." *Wright v. West*, 505 U.S. 277, 296 (1992).

In reviewing this claim, the Connecticut Appellate Court expressly applied the standard in *Jackson v. Virginia* to the facts of the claim.  In its application, the Connecticut Appellate Court first examined the elements of the crimes of conspiracy and robbery in the first degree.

To establish that the petitioner committed conspiracy, the state was required to prove that there was an agreement between two or more persons to engage in conduct constituting a crime and that one of the conspirators committed an overt act in furtherance of the crime agreed upon. *See* Conn. Gen. Stat. § 53a-48(a).  Proof of a conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense, here robbery in the first degree.

To establish that the petitioner committed the crime of robbery in the first degree, the state was required to prove that the petitioner: (1) cause[d] serious physical injury to" a non-participant in the robbery; or "(2) [was] armed with a deadly weapon; or (3) use[d] or threaten[ed] the use of a dangerous instrument; or (4) display[ed] or threaten[ed] the use of what [petitioner] represent[ed] by his words or conduct to be a pistol, revolver . . . or other firearm" in the course of committing a robbery or fleeing from the commission of a robbery as defined in Conn. Gen. Stat. § 53a-133.  Conn. Gen. Stat. 53a-134(a)(4).[3]

The Appellate Court considered both the evidence presented at trial and the inferences that could be drawn from the evidence and determined that there was sufficient evidence for the jury to conclude that the petitioner had entered into an agreement with Concepcion to cause serious physical injury to another person during the robbery at the Chinese restaurant.  The jury was entitled to credit the testimony of Concepcion, who stated that before he and the petitioner entered the restaurant, they planned how they would carry out the robbery, the petitioner put a mask on his face, he covered his face with a shirt and pulled his hat down over his head, and the petitioner took out a .380 caliber semi-automatic pistol and "cocked" it by pulling back the slide to chamber a round of ammunition.  (*See* Resp'ts' Mem., App. J., Feb. 7, 2001 Tr. at 55-82.)

---

[3]  Robbery is committed under when a person:

[I]n the course of committing a larceny . . . uses or threatens the immediate use of physical force upon another person for the purpose of: preventing or overcoming resistance to the taking of property or to the retention thereof immediately after the taking; or compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

22

Furthermore, a Firearms and Tool Examiner from the State of Connecticut's Forensic Science Laboratory testified that when a round is chambered, the firing mechanism is armed which enables the pistol to be fired once the trigger is pulled. *See Gentile,* 75 Conn. App. at 863, 818 A.2d at 106.

The Appellate Court determined that it was reasonable for a jury to have inferred from Concepcion's testimony regarding the petitioner's actions in pulling back the slide of the semi-automatic pistol to chamber a round just before entering the restaurant that he and the petitioner agreed to inflict bodily harm on someone during the course of the robbery. Although the petitioner argued that the jury could also have inferred that in preparing the semi-automatic pistol to be fired, the petitioner intended only to fire the pistol into the air to scare individuals in the restaurant, the Connecticut Appellate Court was entitled to assume that the jury resolved the conflicting inferences in favor of the prosecution. *See McDaniel v. Brown*, 558 U.S. 120, 133 (2010) ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume-–even if it does not affirmatively appear on the record–- that the [jury] resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (quoting *Jackson*, 443 U.S. at 326)).

Viewing the evidence in the light most favorable to the prosecution and drawing all favorable inferences in favor of the jury verdict, the Connecticut Appellate Court's conclusion that the jury could have determined that there was sufficient evidence to satisfy the state's burden of proof on the conspiracy charge was not an unreasonable application of clearly established

Conn. Gen. Stat. § 53a-133. A person commits larceny when that person "with intent to deprive another of property or to appropriate the same to himself or a third person, . . . wrongfully takes, obtains or withholds such property from an owner." Conn. Gen. Stat. § 53a-119.

federal law or based upon an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).

Accordingly,   the petition for a writ of habeas corpus is denied on this ground.

**V.**     **Conclusion**

The Amended Petition for Writ of Habeas Corpus [Doc. # 9] is DENIED.  The Clerk is directed to enter judgment in favor of the respondents and close this case.

The Court concludes that petitioner has not shown that he was denied a constitutionally or federally protected right.  Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of March, 2014.